```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


SIKA INVESTMENTS, LLC                              CIVIL ACTION


v.                                                 NO. 21-404


RLI CORPORATION, ET AL.                            SECTION "F"
```

ORDER AND REASONS

This case concerns a commercial property owner's claim for business interruption and extra expense insurance benefits that were allegedly triggered by government stay-at-home orders enacted in response to the COVID-19 pandemic. Now for a second time, the case has been removed to this Court from Louisiana state court.

Before the Court is the plaintiff's second motion to remand. For the reasons that follow, the motion is GRANTED.

**Background**

In this insurance coverage dispute, the plaintiff Sika Investments, LLC alleges that defendant RLI Corporation, doing business as Mt. Hawley Insurance Company, insured its Slidell strip mall (Camellia Square) and Pearl River hotel (the Microtel Inn & Suites by Wyndham Pearl River/Slidell) under commercial property insurance policy number MCP0168316. Sika claims that the coronavirus pandemic caused it to suffer business interruption

losses that are covered by that policy.  In particular, Sika asserts that COVID lockdowns enacted in response to the pandemic caused "its buildings [to be] damaged and access, ingress, and/or egress to them [to be] prohibited and/or impaired by civil authority."

In hopes of recovering insurance proceeds and related damages, Sika sued RLI/Mt. Hawley,[1] EI Investments, Inc. (d/b/a Eustis Insurance, Inc., hereinafter "Eustis"), Marsh & McLennan Agency, LLC, and ARI Underwriters, Inc. in Louisiana state court on June 8, 2020.  In its state-court petition, Sika brought claims for breach of contract, bad faith, and negligence. As against Mt. Hawley, Sika alleges that the Mt. Hawley insurance policy at issue has "Business Income/Rental Value (with Extra Expense)" limits of $376,184 for the Camellia Square property and $500,000 for the Microtel property that have been wrongfully withheld in spite of Sika's timely reporting of a sufficiently supported claim.[2]  In the event that its business losses are *not* covered by the policy at issue, Sika alleges a variety of failures to effectively procure

---

[1] On September 14, 2020, a federal magistrate granted as unopposed Mt. Hawley's motion to intervene.  In its complaint in intervention, Mt. Hawley contends that it is a separate and distinct corporate entity from RLI and that that fact is clear from the face of the policy Mt. Hawley issued to Sika.  This opinion refers to "RLI" and "Mt. Hawley" interchangeably.

[2] As a result, in addition to insurance proceeds that have allegedly been wrongfully withheld, Sika also seeks statutory penalties from RLI.

sufficient insurance by its insurance agents and brokers, Eustis, Marsh, and ARI.

Invoking this Court's diversity jurisdiction, Mt. Hawley removed Sika's state-court case on February 24, 2021. In its notice of removal, Mt. Hawley contends that Eustis and ARI were improperly joined and that the nondiverse citizenship[3] of those defendants should accordingly be disregarded. Sika argues just the opposite in the present motion to remand, which it filed on March 26, 2021.

I.

Although the plaintiff challenges removal in this case, the removing defendants bear the burden of showing the propriety of this Court's removal jurisdiction. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also

---

[3] Sika is an LLC whose sole member is Brian Reine, who resides in Pearl River, Louisiana. As a result, Sika is a Louisiana citizen for purposes of diversity jurisdiction. RLI is a Delaware corporation which maintains its principal place of business in Illinois and is therefore a citizen of Delaware and Illinois for jurisdictional purposes. And Marsh is an LLC whose sole member is Marsh USA, Inc., a Delaware corporation which maintains its principal place of business in New York. Thus, Marsh is a citizen of Delaware and New York for jurisdictional purposes, and is likewise diverse from Sika.

The rub in Mt. Hawley's assertion of diversity jurisdiction lies in the undisputed *non*-diversity of co-defendants Eustis and ARI. Like Sika, those entities are indisputably Louisiana citizens. Admitting as much, Mt. Hawley nevertheless asserts that the citizenship of Eustis and ARI should be disregarded because such entities were improperly joined by Sika to defeat federal jurisdiction. Thus emerges the central issue before the Court.

Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 1993) (per curiam). Because federal courts possess only the limited jurisdiction assigned to them by the Constitution and Congress, remand to state court is required where a federal court lacks a clear basis for original subject matter jurisdiction. See, e.g., Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000). In light of this structural imperative, any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." Id.

## II.

### A.

The federal removal statute, 28 U.S.C. § 1441, declares that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court . . . embracing the place where such action is pending." Mt. Hawley's asserted basis for original federal jurisdiction in this case is diversity jurisdiction.

The essential elements of federal diversity jurisdiction are straightforward and well known. In simple terms, the diversity statute furnishes the federal district courts with original jurisdiction over civil actions between completely diverse parties with more than $75,000 at stake. See 28 U.S.C. § 1332(a). In

4

certain scenarios, the forum-defendant rule of § 1441(b)(2) may also be implicated. That rule provides that "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." See 28 U.S.C. § 1441(b)(2).

In the present motion to remand, Sika challenges Mt. Hawley's assertion of federal diversity jurisdiction on a pair of separate, but related, grounds. First, Sika asserts that a lack of complete diversity among the parties precludes any basis for diversity jurisdiction in the first place. See, e.g., Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998) (restating the "complete diversity rule," under which "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State"). Relatedly, Sika contends that even if its action were *otherwise* removable on a sound basis for diversity jurisdiction, removal is nonetheless inappropriate *here* because two defendants – Eustis and ARI – are citizens of the forum state of Louisiana.[4]

---

[4] This argument is misplaced and analytically distracting. The forum-defendant rule deals with situations in which a plaintiff sues a diverse defendant in a state court within the *defendant*'s home state (and, thus, where the "home-team" defendant presumably

5

Both challenges present the Court with a single, narrow issue: whether Eustis and ARI were "improperly joined" as a matter of law.  The motion before the Court turns squarely on the answer to that question.  Indeed, if Eustis and ARI were improperly joined as the defendants contend, then their exclusion from the Court's jurisdictional analysis means that Mt. Hawley's removal flouts neither the complete-diversity rule nor the forum-defendant rule. On the other hand, if Eustis and ARI were *not* improperly joined as Sika contends, then their presence in this case clearly deprives the Court of any ground for diversity-based removal jurisdiction.

The Court thus proceeds to analyze the improper-joinder issue briefed extensively by the parties.

B.

"The [improper] joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."  Borden v. Allstate Ins. Co., 589 F.3d 168, 171 (5th Cir. 2009).

> To establish that a non-diverse defendant has been [improperly] joined to defeat diversity jurisdiction, the removing party must prove that there has been outright fraud in the plaintiff's pleading of the jurisdictional facts, or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

---

faces none of the negative local bias that motivated the Framers' provision of diversity jurisdiction).  It is *not* intended to address situations where nondiversity of citizenship already precludes federal jurisdiction in the first place.

6

Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999).

In effecting removal here, Mt. Hawley makes no allegation of "outright fraud" against Sika. Consequently, as Mt. Hawley concisely summarizes, "[a]t issue here is the second of the two means for establishing improper joinder, *i.e.*, Plaintiff's [asserted] inability to establish a cause of action against [Eustis] or ARI in state court." See Notice of Removal at 5.

Mt. Hawley's burden in showing "that there is *absolutely no possibility*" of Sika's prevailing against Eustis and/or ARI in state court is a "heavy" one. See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004) (en banc); Griggs, 181 F.3d at 699 (emphasis added). Determining whether Mt. Hawley has met that burden here requires the Court to "conduct a Rule 12(b)(6)-type analysis . . . to determine whether [Sika's] complaint states a claim under state law against [Eustis and ARI]." Smallwood, 385 F.3d at 573. Mt. Hawley argues that Sika's state-court petition does not state a viable state-law claim against either Eustis or ARI; Sika, of course, begs to differ.

In the state-court petition that launched this litigation, Sika brought claims for "breach of contract and/or negligence" against Eustis and ARI, who allegedly served as insurance brokers/agents to Sika in the course of events that gave rise to Sika's purchase of the heretofore-unfruitful insurance policy at issue. Specifically, Sika alleged that:

7

> To the extent Sika is found to be uninsured and/or underinsured for its Covid-19-related losses under the Policy, Sika submits it was due to the breach of contract and/or negligence of Eustis and ARI in the following non-exclusive particulars:
>
> > (a) Failing to advise Sika about the need for broader virus-related coverage for its retail shopping center and hotel businesses in which there are numerous people entering and exiting daily;
> >
> > (b) Failing to perform due diligence regarding Sika's business as affirmatively was represented would be done; and/or
> >
> > (c) Failing to recommend appropriate insurance coverages to Sika.

See State Court Pet., ¶ 34.

The parties dispute whether Sika has a viable shot at recovering on this claim against either Eustis or ARI, but critically, this is not the first occasion on which they have done so. To the contrary, just last month another Section of this Court concluded in a thorough analysis of a virtually identical issue in a virtually identical case that a similarly situated Slidell-hotel owner had indeed stated a plausible negligence claim against ARI such that ARI's joinder was not improper and remand was required. See VCS, LLC v. Mt. Hawley Ins. Co., 2021 WL 1399879, at *7-10 (E.D. La. Apr. 14, 2021) (Brown, C.J.). Here, as did the plaintiff there, Sika extensively alleges ways in which ARI and Eustis held themselves out as experts in marketing appropriate insurance to shopping centers and hotels. And here, as there - particularly when "construing all 'doubts regarding whether removal

jurisdiction is proper' in favor of remand" - Sika has likewise "stated a claim that [the nondiverse agent/broker defendants] owed [it] a heightened duty and breached such duty by failing to recommend virus-related coverage." Cf. id. at *9 (quoting Acuna, 200 F.3d at 339).

As an alternative basis for its assertion of improper joinder, Mt. Hawley argues that Sika's claims against Eustis and ARI are perempted under Louisiana Revised Statute § 9:5606(A), which requires that damages actions against "any insurance agent, broker, solicitor, or other similar licensee in [Louisiana]" be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered," so long as such date is within an absolute maximum of "three years from the date of the alleged act, omission, or neglect."  As with most peremption evaluations, the key in assessing whether Sika's claims are perempted here depends on fixing the date on which the one-year clock began to run (i.e., the date of the alleged tort, or the date when the alleged tort was discovered). On this issue, Mt. Hawley argues that Sika's one-year window for filing suit runs from 2014, which Sika acknowledges is the year "when the first Mt. Hawley policy was procured for Sika."  See Mot. at 18.  Sika counters that the period should run from the Policy's latest "2019-2020" renewal, since Sika allegedly relied on the allegedly

9

negligent omissions of Eustis and ARI in deciding *then* to renew a policy that may be deemed not to have covered it for pandemic-related losses that Eustis and/or ARI may have negligently overlooked.

Sika's argument is clearly plausible and any basis for finding improper joinder is therefore lacking.  In essence, Sika makes the understandable assertion that it renewed an insurance policy on an annual basis under the guidance of insurance brokers and agents that might well have breached a duty to warn it of a need for additional (or better) coverage.  Because any such actions or omissions by Eustis and ARI could potentially "be construed to constitute an act separate from the initial policy procurement," a Louisiana state court could well find – in its superior expertise on Louisiana peremption law – that Sika's peremptive period restarted with each year's renewal.  See Fid. Homestead Ass'n v. Hanover Ins. Co., 458 F. Supp. 2d 276, 280 (E.D. La. 2006); see also VCS, 2021 WL 1399879, at *10–11 (rejecting similar peremption argument and noting that, "at oral argument, [similarly situated plaintiff] represented that each year at the time of renewal, ARI and Marsh, as agents and brokers for numerous insurers, had an obligation to correspond with Plaintiff regarding Plaintiff's best coverage options for the upcoming year").

\* \* \*

Louisiana state courts enjoy a comparative advantage in interpreting Louisiana state law. Given this obvious reality, the foregoing analysis, and the important structural constraints under which this Court is bound, it is imperative that the Court defer to the Louisiana judiciary in interpreting the emerging questions of Louisiana state law implicated by this case.

Accordingly, IT IS ORDERED: that the plaintiff's second motion to remand is GRANTED. This action is REMANDED to the appropriate Louisiana state court. All remaining motions are DENIED AS MOOT.

New Orleans, Louisiana, May 26, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE